## Wells administrator of Craig *against* Tucker and wife.

*Philadelphia,
Saturday,
March 30.*

The delivery of a bond or personal chattel by the owner in his last illness to his wife, for the use of a third person, is a sufficient delivery to make it a good *donatio causa mortis.*
The widow is a good witness to prove a *donatio causa mortis* by her deceased husband.
A bond is a proper subject of a *donatio causa mortis.*
It seems that a *donatio causa mortis* is not only conditional, to be void if the donor recovers, but it is also revocable by him, being in the nature of a legacy.

THIS was an action of trover for two bonds, tried under the general issue at the *Nisi Prius* in *February* last before Mr. Justice *Yeates.*

From the report of his honour, the evidence was in substance this:

*Andrew Craig* the intestate, had adopted the wife of *Tucker* at a very early age, and maintained her in his house until her marriage. After that event, he frequently manifested his kindness to her family, and in one or two unfinished wills which he left at his death, appeared to have designed a legacy of about 1000*l.* for her husband and children. He died on the 20th *August* 1805, intestate and without issue, leaving a widow, a brother and sister, and some nephews and nieces the children of deceased brothers and sisters. His *widow,* who by the law of *New Jersey* where he had lived, was intitled to half his personal estate, proved upon the trial, that about the 17th of *August* 1805, her husband, having then a sketch of a will in his hand, which he was too ill to finish, said to her, " I have bonds against *Benjamin Tucker* " (the defendant) to the amount of about 1000*l.,* which I " give to his children to be divided between them." He told her where they were, wrapt up in the pigeon-hole of a desk, of which he delivered her the key, and requested her to go and get them. She accordingly got them and locked them up until after his death, when she delivered them to the defendants. After the delivery, *Tucker,* imprudently, but not with any dishonest view, cancelled them, and induced the

original obligee, who had assigned them and a mortgage for securing them, to the intestate, to enter satisfaction of record.

1811.

WELLS
v.
TUCKER.

Judge *Yeates* charged the jury, that if they believed the evidence of Mrs. *Craig*, they ought to find for the defendants, as he was of opinion that the delivery of the bonds to the wife for the children, made them a good *donatio causa mortis*.

The jury found for the defendants; and now upon a motion for a new trial,

*Ingersoll* for the plaintiff contended, 1. That the verdict was against evidence. 2. That the judge misdirected the jury, inasmuch as a delivery by the husband to his wife was not sufficient to constitute a valid *donatio causa mortis*.

Upon the first point the argument is not material. On the second he argued, that this gift wanted an essential requisite to make it valid, and therefore the plaintiff was intitled as administrator. The bond he conceded was a proper subject of this kind of gift, though it was formerly held otherwise. 3 *Woodeson* 513-14. But delivery he said was essential, such a delivery as the donor could not recal. *Ward* v. *Turner* (a), *Drury* v. *Smith* (b). A donation *causa mortis* is subject to but one condition, the restoration of the donor to health. It is not revocable by him, and therefore an irrevocable delivery is of the essence of the gift. Were it not so, these gifts would entirely defeat the statute of wills, and would lead to endless litigation and perjury. They are not subject even to the rules which regulate nuncupative wills; and they are therefore the most dangerous of all dispositions of property. It cannot be surprising then, that the law watches them with great jealousy, and that where there is not a gift which transfers the possession, the donation is ineffectual. *In mortis causa donatione, dominium non transit sine traditione. Voet on the Pandects*, lib. 39. tit. 6. num. 3. 6. There is no case which comes up to this. A delivery to a servant to give to a wife may be good, as in *Miller* v. *Miller*, (c) because the delivery to the servant is absolute; but a delivery to the wife for a third person is not so. She is *sub potestate viri*, and he may at any time countermand his gift; in fact the posses-

(a) 2 *Ves.* 431.    (b) 1 *P. Wms.* 404.    (c) 3 *P. Wms.* 356.

1811.

WELLS
v.
TUCKER.

sion in such a case does not change hands. To say that it is in nature of a testamentary disposition, and therefore revocable, and from thence to argue that absolute delivery is not necessary, begs the question. It is not a testamentary disposition. If it were, the law would not permit one witness to sustain it. So it is a fallacy to say that the wife may accept livery of seisin for, or deliver it to her husband, because still the question recurs, is she not in point of law subject to the authority and commands of her husband? It is not easy to discern the use of a delivery except to prevent a counter-. mand. It is true, that a delivery to the wife for her own benefit is said in one case to be good. But as to property, the wife is in equity considered as a *feme sole;* not so, as to her subjection to the husband's authority. It will be a most dangerous precedent to establish, that a wife, upon her single oath, and so ambiguous a delivery as this, may set up donations by her husband to defeat the next of kin. It will be a complete overthrow of all the statutory precautions in relation to written and nuncupative wills.

*Hallowell* and *Rawle contra.* The testimony of Mrs. *Craig* was decisive as to the facts, if she was believed; and no one could disbelieve her who saw her manner of giving testimony, and recollected that she was speaking against her own interest.

The point of law is almost equally clear. No doubt delivery is essential, but a valid delivery was made to the wife. The danger of these gifts is not the question, but whether the law has authorized them under the present circumstances. It authorizes the wife to act so far like a *feme sole* as to deliver seisin to her husband; *Co. Litt. 52 a; a fortiori* she may deliver seisin to a stranger for him. She may act as executrix to a third person. She may be attorney for her husband. Why then is not a delivery to her for a third person good? It is answered, because it is revocable. So is every such gift. In *Jones* v. *Selby*, (a) it is said by the Lord Chancellor to have been conceded by counsel. It is a consequence of its testamentary character, which runs pretty generally through it, making it even liable for debts, though it

(a) *Prec. in Chan.* 300.

would not be if a *donatio inter vivos. Ward* v. *Turner.* (a)

1811. ·

WELLS
*v.*
TUCKER.

It is further said that the wife is under the husband's authority, and he therefore may countermand. That does not follow. If the husband makes his wife an attorney for the benefit of a third person, he cannot countermand. In *Miller* v. *Miller* the donation was to a servant for the wife who was present, and he handed it over to her immediately; yet it was held good. In *Lawson* v. *Lawson* (b) the husband gave a purse to his wife for her own use, and it was held good. And in *Drury* v. *Smith* the gift was supported, though to a third person for the use of an absent donee. Now if a delivery is good though made to one person for another, and if the wife may be either directly or mediately the donee, what sound reason can there be against her being the person to whom the delivery is made, and a friend or relation the donee? If she is *sub potestate viri* as to the possession, so must she be as to the property. If the former may be revoked, so may the latter. If she cannot take to deliver over, she cannot take to hold. Danger there may be in some cases. It is the duty of judges and juries to watch this kind of gift. But it never can be dangerous where, as in this case, there is clear evidence of a fixed purpose of bounty in the donor towards the donee, and the gift and delivery are supported by a witness against her own interest.

TILGHMAN C. J. This is an action of trover for two bonds which were the property of *A. Craig* the plaintiff's intestate. The defendants claim them as a *donatio causa mortis* made by *Andrew Craig* in his last illness to the children of the defendants. *Andrew Craig* died intestate, and without issue, and the gift was proved by *Theodosia Craig*, his widow, who is intitled by law to one half of her husband's personal estate. She swore, that the gift was made by her husband about three days before his death, and the bonds delivered to her, to be by her delivered over, and that she kept them locked up in her trunk till after the death of her husband, when she gave them to the defendants for the use of their children.

The first reason offered for a new trial, is that the verdict

(a) 2 *Ves.* 434.          (b) 2 *Equ. Abr.* 575.

1811.

WELLS
*v.*
TUCKER.

was against evidence. But this does not appear to have been by any means the case; for the witness who proved the gift was of irreproachable character, and swearing against her own interest. Her credibility was submitted to the jury, and I cannot say that they were wrong in believing her.

The second reason for a new trial is, that there was no *delivery* of the bonds, which is essential to a gift of this kind; that a delivery to the *wife*, was, in point of law, no delivery at all, and that the judge who tried the cause erred in not charging the jury accordingly. This is the only point for consideration.

A *donatio causa mortis* is a gift of a personal chattel, made by a person in his last illness, subject to an implied condition, that if the donor recovers, the gift shall be void. So also it shall be void, if the donee dies before the donor. In this and some other circumstances (being subject to the debts of the donor &c.) it is in nature of a legacy. It was introduced into the common law from the *Roman* civil law, but not in the full extent in which it is recognised in the latter. The civil law takes notice of three different kinds of *donationes mortis causa*, to some of which delivery is essential, but not to all. It is unnecessary to inquire minutely into the civil law, because I consider it as settled, that to gifts of this kind, as incorporated into the common law, delivery is necessary. The whole law on this subject, is fully laid down by lord *Hardwicke* in *Ward* v. *Turner*, 2 *Ves.* 431. It was formerly doubted, but is now established, (as conceded by the plaintiff's counsel) that a bond is a proper subject of this kind of gift. It is a wise principle of our law, that delivery is essential, because delivery strengthens the evidence of the gift. Too much care cannot be taken, in insisting on the most convincing evidence in cases of this kind; for these donations do in effect amount to a revocation *pro tanto*, of written wills; and not being subject to the forms prescribed for nuncupative wills, they are certainly of a dangerous nature. Now let us consider the delivery which was made in this case. In the first place it was not to the donee, but to the donor's wife to be by her delivered over. There is no objection to this mode of delivery. Whether made to the donee immediately, or to another for his use, is immaterial. It was so decided in *Drury* v. *Smith*, 1 *P. Wms.* 404.

The circumstance relied on by the plaintiff's counsel, is, that the delivery to the wife was in fact no change of possession, because the possession of the wife is the possession of the husband, and the wife being in the husband's power, he may at any time take back the possession, and thus avoid the gift. To give this observation its full force, it is contended on the part of the plaintiff, that a gift of this kind passes the property *immediately*, and is not subject to revocation by the donor. Without absolutely committing myself, I incline to the opinion, that in this as in several other particulars, it partakes of the nature of a legacy, and is revocable. No case has been cited exactly in point; but it is laid down in *Ayliff's Pand.* 331., that it may be revoked by the donor's *repenting thereof;* and in *Prec. in Chan.* 300., the Lord Chancellor, in delivering his opinion, said to the counsel, " you agree " that a *donatio causa mortis* is revocable by the testator." It is true that in the arguments of the counsel, as reported, no such concession appears. One would hardly suppose however, that the chancellor would have used those expressions unless the fact had been so. But the case of *Miller* v. *Miller*, 3 *P. Wms.* 356., is strong to the point of delivery. Indeed the argument from that case is *a fortiori;* for there the donation was to the wife, and the delivery to the wife, and held good. There is no weight in the remark, that in that case the testator delivered the chattel in the first instance to a servant, to be by him delivered to the wife; for she was *present*, and the delivery over to *her* was made in a short time and in the testator's presence. There can be no reason why a delivery to the wife for her *own* use should be good, and yet not good if for the use of another. Upon the whole then this donation was perfect; it was made in the testator's last illness, and accompanied with the delivery of the bonds, which is all that the nature of the case admits of. I am therefore of opinion that the plaintiff's rule should be discharged.

YEATES J. There seems to me no ground whatever for asserting that the present verdict was contrary to evidence. It rested solely on the credibility of *Theodosia Craig*, the widow of the intestate, of which the jurors were the sole

judges. They were instructed to deliberate calmly upon her testimony, and on the one hand to consider the danger of such evidence, the necessary consequences of parol evidence in such cases in general, and the particular prepossessions of the witness in this case towards her niece; on the other hand, they were told to recollect, that she testified against her own interest as to one half of the demand, that the impulse of her husband's mind was favourably directed towards Mrs. *Tucker* his adopted child from early infancy, which was confirmed by the unfinished wills wherein he marks her husband and children as objects of his bounty, that the probability of her story, her character and manner of giving testimony, should also be taken into view, and a temperate decision formed on the whole. The jury have affirmed the credibility of the witness by their verdict, with which I am perfectly satisfied. As to the conduct of *Tucker* in cancelling the bonds, and prevailing on *Stephen Sicard* to acknowledge satisfaction on the record of the mortgage, after he had assigned it over to the intestate, the jury were told that it was highly improper and reprehensible; but if the children independently of these acts were intitled to the benefit of these bonds, such acts would not defeat their interest therein.

I think the evidence would have warranted the jury to pronounce the gift to the defendant's children to be absolute in the first instance, and to take effect immediately, and therefore irrevocable in its nature. Nothing was said or hinted at, of its being a conditional gift in case of his death; but *he gave the bonds to* Tucker's *children equally to be divided between them;* and such might be a good present *donatio inter vivos.*

Supposing however that the act was done in contemplation of death, and that it could only take effect as a *donatio causa mortis,* I think it may be established as such. It is agreed on all hands, that in such cases the gift must be made in the party's last sickness, and be accompanied by a delivery of the article to the donee, or some one in his behalf. The objection made in this instance is, that the delivery to the intestate's wife was insufficient, because it still remained while in her possession subject to his control, and therefore revo-

cable. The answer is, that a small matter will operate as a good delivery; such as a mixed possession, the delivery of the key of the room in which the furniture given is, to the donee. *Smith* v. *Smith,* 2 *Stra.* 955. Besides, it is fully established, that a wife is capable of taking a *donatio causa mortis* from her husband, being in nature of a legacy, though it need not be proved as a will. *Miller* v. *Miller et al.* 3 *Wms.* 356., *S. C.* 2 *Eq. Ab.* 356. *pl.* 24., *Lawson* v. *Lawson,* 2 *Eq. Ab.* 575., 3 *Woodes.* 514. Now what good reason can be assigned, that the possession of the article by the wife is sufficient to validate a gift made by her husband in his last illness for her exclusive benefit, and yet that a like possession as agent for another shall not be good? It is equally subject to countermand and revocation in both instances. She may be attorney to deliver seisin to her husband. *Co. Litt.* 52 *a.* Moreover we have the authority of the lord chancellor for asserting that a *donatio causa mortis* taking place *in futuro,* is revocable as a will during the life of the party. *Jones* v. *Selby, Prec. Cha.* 303. And the reason why it should not prevail against creditors, is that it is considered as a legacy. *Drury* v. *Smith,* 1 *P. Wms.* 406., 2 *Bla. Com.* 514. According to the language of the chancellor in the last case, a man certainly, notwithstanding his will, has a power to give away *any part of his* estate in his lifetime. He might in his lifetime, after the making of his will, give away any part of his estate *absolutely;* and by the same reason he might do it *conditionally.* The conditional gift presupposes the power of revocation; were it not so, a gift *bona fide* in the lifetime of the party, would prevail against creditors after his death.

Many of the observations of the plaintiff's counsel seem to me rather referable to the general state of the law, as now settled, than as objections to what was done either by the court or jury in the cause before them. I feel the force of the remarks made, that a written will is attended with more security and certainty, than a verbal gift of goods and property in the nature of a *donatio causa mortis;* and that frauds and perjuries may arise from parol testimony in the latter case, no reasonable mind can doubt. To the court belongs the duty of deciding upon the competency of evidence; but the jury ultimately must decide upon the credibility of the wit-

WELLS
v.
TUCKER.

nesses. As to a widow's oath in cases of this nature, her interests will in general prevent her from acting collusively to the prejudice of children, or collateral kinsmen. Should it unhappily prove otherwise, I know of no other safeguard than the intelligence of independent jurors. If the circumstances will fairly warrant the conclusion, that a nefarious scheme has been meditated to plunder the next of kin, I trust it would soon be rendered abortive.

On the whole, I am of opinion, that judgment on the verdict should be rendered for the defendants.

BRACKENRIDGE J. was of the same opinion.

Judgment for defendants.