# Pittsburgh Railways Company et al., Appellants, *v.* Borough of Carrick et al.

*Boroughs—Street railways—Townships—Grant of right to operate road—Resolution—Minutes of meeting—Right to construct sidings and switches—"Switches"—Subsequent incorporation of borough—Construction of tracks into new car barn—Interference by borough—Laches—Acquiescence—Ratification—Bill in equity—Injunction.*

1. Laches may be imputed to the Commonwealth or to a municipality as well as to an individual.

2. Where the tracks of a street railway company have occupied a township road pursuant to authority of the township's supervisors for a period of fourteen years, at the end of which time a borough was erected embracing the road in question, the fact that the railway's right to occupy the road was not challenged until twelve years thereafter, is strong evidence of acquiescence on the part of the borough authorities.

3. The manner in which the consent of so elementary an organization as a township, where it is requisite, is given, is not so important as that the fact of its being given should clearly appear. Although action should be taken by means of a formal resolution, duly recorded in the minutes of the meeting, nevertheless, where the consent of the supervisors is evidenced by a written instrument duly signed and acknowledged by them, their failure to have a minute of the transaction entered upon their records cannot operate to invalidate the consent.

4. Though the obtaining of a municipality's consent to occupy any of its streets be a condition precedent to the lawful exercise of the power to do so by a railway company, nevertheless where the consent has not been obtained in advance, there may be a subsequent ratification.

5. While strictly speaking a switch is a mechanical arrangement of movable parts of rails for transferring cars from one track to another, the word is commonly used as a synonym for siding and turnout.

6. The rule that, even where not expressly given, the right to build switches and sidings is included as a necessary incident to the grant of the right to build a railroad, is applicable to street railways as well as to steam railroads.

7. Borough authorities may exercise reasonable control over the manner in which switches are laid or sidings constructed.

8. Switches and sidings should be laid so as to cause the least

possible inconvenience to traffic, and if there be any irreconcilable controversy upon this subject, a court of equity will have jurisdiction to determine what is a reasonable occupancy of the street under the circumstances.

9. On the hearing of a bill in equity brought by a street railway company to enjoin a borough from interfering with the laying of switches connecting complainant's tracks in the highway with its car barn, it appeared that a township in 1890 granted authority to complainant to lay "a single or double track railway with the necessary sidings, turnouts and switches," and to maintain, operate and use such railway on a certain road within its limits. In 1904 a borough was created including such road within its limits. In 1905 the company paved part of the street on either side of its tracks at considerable cost. In 1916 the railway attempted to lay switches, wholly on the cartway of the street and on its own sidewalk, from its main tracks to an abutting lot on which it had erected a car-barn. The borough authorities denied the right to construct such switches and threatened to prevent its exercise. *Held,* (1) the complainant company had the right and authority to lay sidings and switches, and (2) the decree of the lower court dismissing the bill was reversed, the bill reinstated and the record remanded with directions that an injunction be issued.

10. In such case the fact that after the borough was incorporated it widened the road by adding five feet upon either side is immaterial.

Breen v. Pittsburgh, Harmony, Butler & New Castle Ry. Co., 220 Pa. 612, distinguished by the fact that there the rights of an abutting owner were affected.

*Supreme Court, Practice—Statement of questions involved.*

11. The only questions that will be considered on appeal are those presented by the statement of the questions involved.

Argued Oct. 15, 1917. Appeal, No. 146, Oct. T., 1917, by plaintiffs, from decree of C. P. Allegheny Co., Oct. T., 1916, No. 2056, in equity, dismissing bill in equity for injunction in case of Pittsburgh Railways Company, Consolidated Traction Company and The Suburban Rapid Transit Street Railway Company, Corporations of Pennsylvania, v. The Borough of Carrick, a Municipal Corporation, and Charles F. White, J. A. Haupt, John McCarthy, Harry Beardshaw and John Seiferth, Members of the Council of the Borough of Carrick. Be-

fore BROWN, C. J. POTTER, MOSCHZISKER, FRAZER and
WALLING, JJ.   Reversed.

Bill in equity for injunction to restrain a borough
from interfering with operations of complainant com-
pany in laying switches connecting its tracks in the high-
way with its car barn.   Before SHAFER, P. J.

The facts appear by the opinion of the Supreme Court.

The lower court dismissed the bill.   Plaintiffs ap-
pealed.

*Error assigned,* among others, was in dismissing the
bill.

*E. W. Smith,* of *Reed, Smith, Shaw & Beal,* with him
*A. W. Robertson,* for appellants.—The grant of the right
to operate a railway carries with it the right to construct
necessary sidings, turnouts and switches: Vernon Town-
ship v. United Natural Gas Co., 256 Pa. 435; Meixell v.
Northampton Central Street Ry. Co., 7 Northampton
County Reports 274; Jefferson County v. Slagle, 66 Pa.
202; Pennsylvania Railroad v. Montgomery County Pas-
senger Railway, 167 Pa. 62; Scranton Traction Com-
pany v. Delaware & Hudson Canal Company, 1 Superior
Ct. 409; Beaver Borough v. Beaver Valley Railroad Co.,
217 Pa. 280; The Cleveland & Pittsburgh Railroad Co.
v. Speer, 56 Pa. 325; Borough of Pottsville v. People's
Railway Company, 148 Pa. 175; Black v. The Philadel-
phia & Reading Railroad Co., 58 Pa. 249.

The rule as to the construction of switches, turnouts
and sidings by railroads is applicable to street railways:
Rafferty v. Central Traction Co., 147 Pa. 579.

*John C. Bane,* with him *William M. Ewing,* for appel-
lees.—The power of the borough to give or refuse consent
to the occupation of its streets is unqualified: Miners-
ville Borough v. Schuylkill Electric Railway Company,
205 Pa. 394; West Chester Borough v. Postal Telegraph-

Cable Company, 227 Pa. 384; Carlisle & Mechanicsburg Street Ry. Company's App., 245 Pa. 561; City of Mc-Keesport v. McKeesport and Reynoldton Passenger Ry. Company, 252 Pa. 142.

The written consent given by the township supervisors to complainants to operate its railway on the road in question, no minute or record thereof having been made in the proper books of the township, was not an official act and is a nullity: Pennsylvania Railroad v. Montgomery County Passenger Ry., 167 Pa. 62; Tamaqua and Lansford Street Ry. Company v. Inter-County Street Ry. Company, 167 Pa. 91; Union Street Ry. Company v. Hazleton and North Side Electric Ry. Company, 3 D. R. 785.

The term "sidings, turnouts and switches" in the alleged township grant must be construed to mean such sidings, turnouts and switches as were necessary to the operation of the railway within the limits of the road: Breen v. Pittsburgh, Harmony, Butler and New Castle Ry. Company, 220 Pa. 612.

OPINION BY MR. JUSTICE POTTER, January 7, 1918:

This was a bill in equity filed by the Pittsburgh Railways Company, the Consolidated Traction Company, and the Suburban Rapid Transit Street Railway Company, against the borough of Carrick and five individuals, members of the council of that borough, for the purpose of preventing the defendants from interfering with the operations of the railways company in laying switches connecting its tracks in the highway with its car barn. A preliminary injunction was granted, which, upon final hearing in the court below, was dissolved, and the bill dismissed. Plaintiffs have appealed.

The facts, practically undisputed, appear in the findings of the trial judge, substantially as follows: The Suburban Rapid Transit Street Railway Company was incorporated on September 28, 1886, and by various mergers and leases has become part of the system of the

Pittsburgh Railways Company, and is operated by it. By an agreement in 1889, and a deed in 1893, the Birmingham and Brownsville Macadamized Turnpike Road Company granted to the Suburban Rapid Transit Company a right of way for a street railway, with necessary turnouts and switches, on its turnpike road, which it operated as a toll road in Baldwin Township, the road being of the width of fifty feet. On June 17, 1890, the two supervisors of Baldwin Township granted to the street railway company the right to lay a single or double track railway with the necessary sidings, turnouts and switches, and to use electricity as its motive power, and to put up such poles and wires as were necessary for its overhead system, along a number of roads in the township, including the Brownsville turnpike. The Suburban Rapid Transit Railway Company constructed and operated a single track street railway on the Brownsville road before 1890, which it or its successors afterwards converted into a double track railway. The borough of Carrick was incorporated in 1904 from territory in that part of the township of Baldwin through which the Brownsville road ran, and this road thereupon became a street of the borough.

In 1905 the borough of Carrick widened the Brownsville road to a width of sixty feet by adding five feet to each side, and, as part of this improvement and the paving of the street, the plaintiff paid for the paving of the tracks and three and a half feet on each side, at a cost of some thirty thousand dollars or more. When the borough was incorporated the railways company had a car barn in the borough, which was connected by switches with its tracks on the street.

Until a short time ago, the plaintiff company has been running single truck cars upon the road in question, and these have been stored in its car barn. The management lately reached the conclusion that it would be wise to use larger cars, with double trucks, and, therefore, purchased a number of such cars, they being more economical and

convenient in operation than the old cars, and they also afford better accommodations to the public. The car barn now in use is not adapted for storing cars of this size, and the building and plot of ground upon which it is erected does not afford sufficient space to store as many cars of the large type as the company wishes to store in that neighborhood. The plaintiff company, therefore, recently purchased additional ground at the southeast corner of Woodlawn avenue and Brownsville road for the purpose of building a new car barn thereon. Thereafter it applied to the council of the borough of Carrick for permission to lay switches from the tracks on the Brownsville road, across the pavement into this lot so purchased, in order that it might take its cars in and out of the barn which it proposed to build; but this permission was refused. Sometime thereafter application was made by the street railway company to the burgess of the borough, for a permit to lay such tracks, and the desired permit was issued by the burgess. Thereafter, on September 26, 1916, the Pittsburgh Railways Company attempted to lay switches from its tracks to the lot in question, but it was prevented from doing so by members of the council, and by the police of the borough.

It clearly appears from the record that, in 1890, the supervisors of Baldwin Township gave to the street railway company their written consent to construct or lay down on the road "a single or double track railway with the necessary sidings, turnouts and switches, and to maintain, operate and use such railway," during the term of the company's charter, and it further appears that, acting under the consent so given, the street railway company constructed its line of railway and operated it on the highway then in the township of Baldwin, for some fourteen years prior to the incorporation of the borough; and that its right to so build and operate was not questioned by the authorities of the borough for some twelve years thereafter, making in all a period of some

twenty-six years of unquestioned use of the highway by the street railway company. If, during the fourteen years that the territory in question remained in the township, the right of the street railway to occupy the highway remained unchallenged, it is, to say the least, doubtful whether the authorities of the borough, which was created after that time, had any standing which would properly enable them to raise the question. The fact that they made no effort to do so for twelve years afterward is strong evidence of acquiescence, upon the part of the borough authorities, in the claim of the street railway to rightful occupation of the highway. Laches may be imputed to the Commonwealth as well as to an individual: Com. v. Bala & Bryn Mawr Turnpike Co., 153 Pa. 47, 53; Bailey's Est., 241 Pa. 230, 232. And, if the Commonwealth may be charged with laches, clearly a municipality is not immune.

In the present case, when the street railway was projected the highway in question was in the possession, and under the control, of a turnpike company, and, according to the testimony of the attorney for the township supervisors, it was an open question whether, under the circumstances, the consent of the supervisors was necessary. But it was considered wiser to obtain their consent, if possible, and accordingly the supervisors met, and discussed the question, and signed a paper giving their consent to the construction of the railway upon the turnpike. They also acknowledged this paper in due form before a notary public. There was no township clerk, and no minute of the transaction was entered upon any township record. It is this feature which affords the only ground for objection to the validity of the grant of authority by the supervisors. The manner in which the consent of so elementary an organization as a township is given, where it is requisite, is not so important as that the fact of its being given should clearly appear. In such cases action should be taken by means of a formal resolution, duly recorded in the minutes of the

meeting. But where, as here, the consent of the township supervisors was evidenced by a written instrument duly signed and acknowledged by them, the failure of the supervisors to have a minute of the transaction entered upon their own records, cannot operate to invalidate the consent, which in fact was granted. Even in cases where consent has not been obtained in advance, as it should have been, there may be subsequent ratification. As was said by ENDLICH, J., in Penna. Schuylkill Valley R. R. v. Philadelphia & Reading R. R., 160 Pa. 277, in an opinion approved by this court (p. 298) : "Though the obtaining of the city's consent to occupy any of its streets be a condition precedent to the lawful exercise of the power to do so by a railroad company, it cannot be pretended that, where the power has been exercised without previous consent, the act cannot be subsequently ratified and legalized by the city. Nor is there any method prescribed by which alone consent can be given by the city, antecedently or subsequently. I agree with the master entirely that the facts of this case establish, in equity, a subsequent ratification by the city of plaintiff's entry upon its streets for the purpose of constructing the track here in question, by virtue of which, under the principle of Com. v. Bala & Bryn Mawr Turnp. Co., 153 Pa. 47, and a multitude of other decisions, it has divested itself of the right to raise the objection of want of antecedent municipal authority."

In the case at bar, the court below passed over the question of the validity of the grant of authority by the supervisors, upon the ground that the subsequent action of the borough of Carrick in agreeing with the street railway company as to the share it would assume in paving the street, was ample evidence of the consent of the local authorities to the maintenance of the street railway as it then was. The trial judge was, however, of the opinion that the plaintiff company was not authorized to lay tracks outside of the cartway in the street, and that it had no implied right to do so. We cannot agree with

the limitation thus placed upon the rights of the street
railway company.   The grant of authority from the su-
pervisors, which we regard as valid, is broad in its terms.
It authorizes the construction of "a single or double
track railway with the necessary sidings, turnouts and
switches."   Strictly speaking, a switch is a mechanical
arrangement of movable parts of rails for transferring
cars from one track to another.   But, in common speech,
the word "switch" is often used as a synonym for both
siding and turnout.   In Philadelphia v. River Front R.
R., 133 Pa. 134, Mr. Justice MITCHELL said (p. 139)
that the three words, "not only in popular use, but in
the dictionaries, are treated as to some extent inter-
changeable."   In the present case it is apparent that a
switch or turnout is necessary to connect the car barn
with the lines of tracks in the street.   In the opinion of
Judge EVANS in the court below, granting the prelimi-
nary injunction, it was well said, "That the street rail-
way when constructed and put into operation would re-
quire some place to store its cars when they were not in
use, other than the tracks on the street traversed by the
street railway company, is too self-evident a proposition
to be discussed.   It would not always be using all its
cars, and it could not store those cars on tracks on the
surface of the street that it traversed.   It must have
some place, either a building or a yard off the line of the
street, in which to store its cars, and, to store its cars
there, it must have a track connecting that point with its
main line, and, with that necessary situation present to
the ones who granted the franchise to the railway com-
pany to occupy the streets, they must have intended that
the switches which they provided for should include a
switch running to the car barn."   In the same opinion
the case of the Cleveland & Pittsburgh Railroad Com-
pany v. Speer, 56 Pa. 325, is cited, in which the question
arose whether the railroad company, which had the right
to occupy the street with its main track, had also the
right to connect, by means of a switch, its main line with

its abutting property on which was erected its engine house and shop. Mr. Justice AGNEW there said (p. 335) : "The power of the company to run its road to Pittsburgh, and to locate and construct it on Preble street, being established, it carries with it the authority to make and maintain the switches which are the direct subject of this action. By the express words of this charter, the power is conferred of making as many sets of tracks as are deemed necessary. But if this were not expressed, it is clearly to be inferred from the general powers conferred and the essential purposes of the grant." And in Beaver Boro. v. Beaver Valley Railroad Co., 217 Pa. 280, where the borough authorities had authorized the construction of the main tracks, but attempted to enjoin the construction of the siding, alleging that the company had no authority to construct it, our Brother STEWART, after pointing out that the use of the switch and siding would be consistent with the continued use of the street as a public thoroughfare, said (p. 286) : "Under such circumstances the right of the company in the premises is not open to question. The right to build the switch and siding is included as a necessary incident in the right to build a railroad. So much we have repeatedly asserted."

It is suggested that as these rulings were made in steam railroad cases, they are not applicable to street railways. But, in so far as the principle under discussion is concerned, there is room for no such distinction in its application. In Boro. of Pottsville v. People's Ry. Company, 148 Pa. 175, the principle was directly applied to a street railway.

In dissolving the injunction in the present case, the trial judge cited and relied upon the decision in Breen v. Railway Co., 220 Pa. 612. But the question there decided was essentially different. The railway company there proposed to lay a track on the sidewalk, between the curb line and the property line of complainants, the adjoining property owners; and it was held that this

would be an unauthorized invasion of their rights as
abutting property owners. No such question arises in
this case, as the complainant here is the abutting prop-
erty owner, and is seeking to connect its tracks in the
street with its own abutting property. It intends to
construct its switches and sidings only on the cartway
of the street and across its own sidewalk. There is no
allegation that it proposes to touch the sidewalk in front
of any premises other than its own.

The fact that, after the borough was incorporated, it
widened the Brownsville road by adding five feet upon
each side, has no bearing whatever upon the question
under consideration. When the additional ground be-
came part of the highway it was subject to the same uses
and purposes as the ground which had been previously
occupied as a highway. It added to the desirability of
the street, and to the convenience of the public, which
made use of it, and the plaintiff company recognized this
fact by agreeing to increase the proportionate amount
of paving which it should do. But its rights upon the
highway, under its original grant of authority, were not
limited to the width of the road as it then stood. It
was entitled to share with the rest of the public in the
advantages of a widened street. The borough authori-
ties may without doubt exercise reasonable control over
the manner in which switches are laid or sidings con-
structed. The original grant of authority provided that
the work of construction, with reference to leaving the
highway in good repair, should be done under the direc-
tion of the supervisors, who at that time constituted the
local authorities in that respect. As was said in the
opinion granting the preliminary injunction, the tracks
should be laid so as to cause the least possible incon-
venience to travel. And, if there be any irreconcilable
controversy upon this subject, a court of equity will have
jurisdiction to determine what is a reasonable occupancy
of the street under the circumstances.

It is not necessary to consider the sufficiency of the

reasons of the borough council for refusing its consent to the laying of the switches, as those reasons are not involved in this appeal. The real question considered by the court below, and the only one presented here by the statement of the question involved, is the legal right of the railway company, under its grant of authority from the township, to lay switches connecting its main tracks in the street with its car barn upon its own abutting property, without the consent of the borough of Carrick, incorporated years afterwards, and within whose limits lie a part of the road covered by the township grant. Upon this question our conclusion is, that the plaintiff company clearly has the right and authority to lay such switches.

Of the assignments of error, the third to the fifth inclusive, the seventh to the twelfth inclusive, the fifteenth and sixteenth, and the twenty-first to the thirty-third inclusive, are sustained. The decree of the court below is reversed, and the bill is reinstated, and the record is remitted, with directions that an injunction be issued, restraining the borough of Carrick and the other defendants, and their agents and employees, from interfering with, preventing or obstructing the plaintiffs, in the construction, maintenance and operation of the necessary street railway switches or turnouts, connecting their double tracks on Brownsville road with their property at the southeast corner of Woodlawn avenue and Brownsville road in the borough of Carrick. The costs of this appeal, and in the court below, to be borne by the appellees.