Chicago Title & Trust Company, Administrator, Appellant, v. Margaret Louise Kirchner and Greenebaum Safe Deposit Company, Appellees.

## Gen. No. 24,617.

1. GIFTS, § 22*—*when mental capacity of donor and absence of undue influence shown.* Evidence in a suit to set aside gifts of personal property, examined and *held* to show that the donor was, at the time of the gift to her niece, *compos mentis* and that no undue influence or artifice was resorted to, to persuade her to make the gift.

2. GIFTS, § 27*—*when inference against gift not indulged because of devising clause of will covering personalty.* Where it appeared that, subsequent to a gift of her personal property to her niece, deceased executed a will in which she devised both real and personal property, and it also appeared that the lawyer who advised deceased in making the gift also drew the will, the court will presume that, in including a devise of personal property in the will, he was merely acting in an abundance of caution so that deceased should not die intestate as to any property in case she possessed personalty not included in the prior gift, and no inference against the gift will be indulged because of the devising clause in the will.

3. GIFTS, § 23*—*when gift not revoked by subsequent will.* A will made subsequent to a gift either *causa mortis* or *inter vivos* does not necessarily operate to revoke such gifts.

4. GIFTS, § 8*—*what is sufficient delivery of money in bank.* There was a sufficient delivery of money in a bank to sustain a gift *causa mortis*, where it was transferred and came into the possession of the donee before the donor's death.

5. GIFTS, § 8*—*what is sufficient delivery of mortgages, notes, etc., in safe deposit box.* Property, consisting of mortgages, notes, etc., kept by the owner in a safe deposit box, was delivered, so as to effect a gift *causa mortis*, where the owner gave the donee a power of attorney and the key and the donee thereby obtained access to the box, took possession of the property and placed it in her own safe deposit box before the death of the donor.

6. GIFTS, § 28*—*when declarations of donor admissible.* Declarations of a donor regarding the fact of gifts of property *causa mortis* were properly received in evidence, as confirmatory of the gifts, in an action to set them aside.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCXIII 19

7. GIFTS, § 1*—*what constitutes gift inter vivos.* A gift of personal property made in view of the donor's death and accompanied by actual delivery, though not sustainable as a gift *causa mortis*, because not made to take effect only in event of the donor's death by her existing disorder, may be sustained as a gift *inter vivos*.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed March 10, 1919. *Certiorari* denied by Supreme Court (making opinion final).

FREDERICK A. BANGS, for appellant.

R. W. CLIFFORD, for appellees.

MR. JUSTICE HOLDOM delivered the opinion of the court.

The bill in this case seeks to set aside gifts of personal property made by Agnes A. Gray, deceased, to her niece, the defendant, Margaret Louise Kirchner. The property given consisted of a balance to the credit of the donor in the Hibernian Banking Association of Chicago amounting to $1,683.68, five notes secured by mortgages, two for $3,000 each, two for $1,500 each and one for $1,650, and certain other moneys and coins. The gifts were made in *causa mortis* a few days prior to the death of Agnes A. Gray on November 13, 1917. At the time of the gift the deceased was suffering from a mortal sickness and was unable to leave her sick bed to make the transfer of some of the property which was in her safety deposit box in the Continental and Commercial Savings Deposit Company, and for the purpose of enabling the defendant, Margaret Louise Kirchner, to obtain such property from her box she executed a power of attorney to her, in force of which access was obtained to the box and the property therein taken possession of by defendant Kirchner and together with the balance drawn from the Hibernian Bank was by her placed in her safety

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

deposit box, which she rented from the defendant, the Greenebaum Safe Deposit Company. A diamond ring worn by deceased was given to the defendant Kirchner and received by her into her actual possession, although she afterwards placed the same upon the finger of deceased so that she might wear it, which she did until she died, when the ring was removed by the undertaker and redelivered to the defendant Kirchner. At the time of the death of Agnes A. Gray, the defendant Kirchner was in the actual physical possession of all the property now in dispute.

It is sought to set aside these gifts and to recover them from the defendant Kirchner on behalf of the estate of Agnes A. Gray upon the ground of the alleged mental incapacity of the deceased at the time to make a gift or to execute any binding legal contract, and for the further reasons that the said personal property and the power of attorney were obtained from the deceased by the defendant Kirchner by false and fraudulent statements and by undue influence and persuasion by her.

It is alleged in the bill that defendant Kirchner claims to hold title to the property in virtue of a gift which she claims was made by said Agnes A. Gray on November 7, 1917, wherein said Gray said to her, ''I give to you all of my personal property and you may go and take possession of the same at once.'' An injunction was granted *ex parte* enjoining defendant Kirchner from disposing of the property and the defendant Greenebaum Safe Deposit Company from allowing access to the box of the defendant Kirchner, in which said property was contained. Upon a trial before the chancellor the injunction was dissolved and the bill was dismissed for want of equity, from which decree complainant prosecutes this appeal.

The evidence shows that the deceased, Agnes A. Gray, was, at the time of the transactions complained about, a widow 78 years of age, without descendants, and that she left her surviving two sisters, Mrs. Mar-

garet Johnson and Mrs. Sophia Kirchner, and certain children of deceased's two dead brothers, her next of kin. John A. McAnrow was the legal adviser of deceased and all that she did in the premises was done under his advice.

November 9, 1917, deceased made her will, in which she gave all her property equally between her sister Sophia Kirchner and her niece, the defendant Margaret Louise Kirchner. It appears that this will has since been admitted to probate in the Probate Court of this county. At the time of the making of the gift it was established by the evidence of several credible witnesses that the deceased made the gift absolutely, saying, "I give it to Miss Kirchner absolutely, and I don't want it or expect it back again"; that her lawyer then told her that she never could get it back again, to which she replied, "That's the way I want it. She is deserving of it."

It also appears that deceased and her sister, Margaret Johnson, and other members of the Johnson family had lived together in the house of Agnes A. Gray from 1910 to 1914, and that thereafter their relations were not cordial.

Agnes A. Gray when in the hospital was anxious to have her niece, Margaret Kirchner, come to her. This niece lived with her mother, Sophia Kirchner, in Pittsburgh, Pennsylvania, and at the written request of Mrs. Gray she came to Chicago and was with her from that time until the death of Mrs. Gray. Subsequently Sophia Kirchner, Margaret's mother, came to Chicago from Pittsburgh and was with her sister, Mrs. Gray, until the time of her death. In the first instance it therefore appears that the Kirchners did not impose themselves upon Mrs. Gray, but that Margaret came to her from Pittsburgh at deceased's insistance and request.

An examination of the evidence convinces us that its preponderance proves that Agnes A. Gray at the

Chicago Title & Trust Co. v. Kirchner et al., 213 Ill. App. 289.

time of the making of the gift of personal property to her niece in dispute was *compos mentis,* and that no undue influence or artifice was resorted to by defendant Kirchner nor any one else to persuade her to make the gift, and that the whole transaction was in accord with the conscious wish and desire of Mrs. Gray. While Mrs. Gray was mortally ill and suffering from an incurable disease, she at all times knew what she was doing and understood the nature and quality of her act.    She knew that she was giving her personal property absolutely to her niece Margaret and in so doing was ignoring her sister, Margaret Johnson, and the law gave her the right to have her wishes carried into effect and this she did in a manner which the law approves as sufficient for that purpose.    There is nothing that we can find in the evidence warranting a conclusion that at the time of the transaction in question Mrs. Gray's mind was not clear and that what she did was not in the exercise of her own free will at a time when she was mentally capable of understanding all that she did.    Furthermore, as Margaret Johnson had no legal claim upon the property of her sister, Mrs. Gray, the latter was free to make such disposition of it as she might see fit, either by gifts *causa mortis, inter vivos* or by will.

It is contended that because subsequent to the gift deceased made her will in which she devised both real and personal property, it is therefrom inferable that she intended to revoke the gift and have all of her property pass by her will.    The lawyer knew at the time he drew the will of the prior gift of the personal property to testatrix's niece Margaret, and we will assume that, acting in the abundance of caution and so that Mrs. Gray should not die intestate as to any of her property, he included a devise of personalty in the will to pass any such property which she might not have already given to defendant Kirchner, if any she had.

We do not think that any inference can be indulged

against the gift because of the inclusion of the devise of personal property in the will. Furthermore, at the time the will was made the personal property given was in the actual custody and possession of the donee, Margaret Louise Kirchner, and beyond the control of Mrs. Gray. A will made subsequent to a gift either *causa mortis* or *inter vivos* does not necessarily operate to revoke such gifts. 1 Williams on Executors (9th Ed.), 691.

We think the delivery of the property in question was, as a matter of law, complete under the method adopted in its transfer. The money in the bank was transferred and came into the possession of the donee. The other property, mortgages, notes, etc., were in a safe deposit box of Mrs. Gray and, under a power of attorney with the delivery of the key by Mrs. Gray to her niece Margaret, access was obtained to the box and defendant Kirchner took possession of the property given and put it all in another safety deposit box of her own, where it was at the time of Mrs. Gray's death. Under the circumstances this constituted as full and complete a delivery at the time as was possible. Mrs. Gray's declarations regarding the fact of the gift made to others are confirmatory of her action and were proper to be received, as they were, in evidence. *Hagemann v. Hagemann,* 204 Ill. 378, is a case in which the delivery of the key to the box containing the note transferred was held to be a good, symbolic delivery, and also that testimony as to declarations of the donor was admissible as evidence.

In *Telford v. Patton,* 144 Ill. 611, it is held that three requisites are necessary to constitute a *donatio causa mortis,* viz.: First, the gift must be with a view to the donor's death; second, it must have been made to take effect only in the event of the donor's death by his existing disorder; third, there must be an actual delivery of the subject of the donations. The first and third elements above stated are present in this case, but not the second, for the gift as made was irrevoca-

ble.   The gift, however, if not conclusively effective as one *causa mortis,* is abundantly sustained as a gift *inter vivos,* for as said in the *Patton* case, *supra:*

"It is essential to a donation *inter vivos* that the gift be absolute and irrevocable, that the giver part with all present and future dominion over the property given, that the gift go into effect at once and not at some future time, that there be a delivery of the thing given to the donee, that there be 'such a change of possession as to put it out of the power of the giver to repossess himself of the thing given.' (1 Parsons on Contracts, marg. page 234; *Dole v. Lincoln,* 31 Me. 422; *Robinson v. Ring,* 72 Me. 140; *Northrop v. Hale,* 73 Me. 66; *Grover v. Grover,* 24 Pick. [Mass.] 261). The delivery must be made with the intent to vest the title in the donee. (*Jackson v. Twenty-Third St. Ry. Co.,* 88 N. Y. 520.)   As a verbal gift is an executed contract, delivery of the subject-matter of the gift is of the essence of the title. (*Grover v. Grover, supra; Wilson v. Keller,* 9 Bradw. 347.)"

We see no reason to disturb the decree of the Circuit Court and it is therefore affirmed.

*Affirmed.*