Alice Oliver, Appellee, v. Isabelle Crook, Administratrix of Estate of James R. McMurdie, Deceased, et al., Appellants.

## Gen. No. 42,079.

Heard in the second division of this court for the first district at the December term, 1941. Opinion filed December 14, 1943.

EDWARD T. HOWE, of Chicago, for certain appellants.

ROSS, BERCHEM & SCHWANTES, of Chicago, for certain other appellant.

ARTHUR ABRAHAM, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

A chancery proceeding in which plaintiff claims to have received as a gift from James R. McMurdie, deceased, during his lifetime, the contents of a safety deposit box. The complaint charges that Isabelle Crook, as administratrix of the estate of McMurdie, deceased, obtained possession of the contents of the box, has

withheld the contents from plaintiff, and has stated that she proposes to distribute the contents to herself, Henrietta Springer, Joseph McMurdie and Grace Campbell, as the heirs of McMurdie; that the administratrix has sold the jewelry contained in the box and has perhaps sold part of the securities contained therein, and has made some disposition of the cash found therein; that the administratrix holds the assets as a constructive trustee for plaintiff and should be required to account to plaintiff and turn over to her the contents of the box together with the proceeds which may have been realized by the administratrix through selling or disposing of part of the contents; that plaintiff is entitled to an accounting against the administratrix and the four individual defendants relative to the contents of the safety deposit box. The cause was heard by a chancellor upon the verified complaint, the verified answer, the verified reply thereto, and evidence heard in open court, and a decree was entered finding the equities in favor of plaintiff and ordering defendant Isabelle Crook, as administratrix, to pay over to plaintiff in due course of administration the sum claimed by plaintiff, $4,233.31, and ordering defendant Isabelle Crook in her individual capacity and the other three defendants to each pay over to the administratrix the sum of $1,293.79. It was conceded that the administratrix sold the contents of the box, save an insurance policy contained therein, for $4,233.31 and that she distributed, without a court order, to each of the individual defendants, including herself, the sum of $1,293.79. Defendants appeal.

No point is raised on the pleadings. Briefs were filed by the four defendants sued individually, and briefs were also filed by Isabelle Crook as administratrix.

It is clear that plaintiff deserved the gift that she claims McMurdie gave her. After the death of his wife, a sister of plaintiff, and for about four years pre-

ceding his death, McMurdie resided at the home of plaintiff and her husband. During the last year of his life he suffered from cancer, which caused his death in February, 1940. Because of his condition he required constant nursing and care, which was given to him by plaintiff. She prepared certain diets for him and sometimes it was necessary for her to feed him; she took care of his room and clothing, and plaintiff's husband bathed him. Plaintiff received no compensation for the nursing and care and McMurdie made no regular payments for board and room during the time that he lived at the home of plaintiff although he occasionally contributed small amounts toward board and lodging.

For some time prior to his death McMurdie had a safe deposit box at the Upper Avenue National Bank of Chicago. The box contained stocks, bonds, cash, jewelry, and an insurance policy, and it is stipulated that the value of the contents of the box, exclusive of the insurance policy, was $4,233.31. On the evening of January 5, 1940, less than a month before his death, McMurdie was present at a family birthday dinner at the home of plaintiff. Present at the dinner were McMurdie; plaintiff and her husband, E. M. Oliver; Mr. and Mrs. William K. Oliver; William R. Keene, and Mr. and Mrs. Russell M. Oliver. William K. Oliver testified: ''Toward the end of the meal Mr. McMurdie got up and said he wasn't feeling well, he was going to his room. He started away from the table and turned around and said—my mother, Alice Oliver, always called her mother—he said, 'mother, I am going to give you the key to my safety deposit box. I want you to have the securities there that is in there. I want you to have those.' At that time he handed her the key to the box and then he went upstairs.'' William R. Keene, Mr. and Mrs. Russell M. Oliver and Mrs. William K. Oliver also testified to the same effect and there is no substantial variance in the testimony of the five wit-

nesses. None of the witnesses has any interest in the estate of McMurdie and the testimony as to the gift is not impeached in any way. The able and experienced chancellor who saw the witnesses and heard them testify made a finding in the decree that follows their testimony as to the gift. Counsel for defendants, upon the oral argument, conceded that this court would have to assume as true the testimony given as to the occurrence at the birthday dinner. After January 5, 1940, Mr. McMurdie was in bed most of the time, although he may have been outside of the house once or twice. He did not go to the safety deposit box after January 5. Nor did plaintiff, until after the death of McMurdie.

This appeal presents a case in which it is clear that McMurdie intended to make a gift of the contents of the box to plaintiff. Defendants insist, however, that the evidence is not sufficient to prove one of the essentials necessary to constitute a gift *inter vivos, viz.,* delivery. On the other hand, counsel for plaintiff contends that the delivery of the key to the safe deposit box was a good symbolic delivery of the contents of the box.

"Constructive Delivery. The trend of modern decisions is toward a modification of the early English rule requiring an actual, manual delivery of the property in all cases, to constitute a valid gift *inter vivos,* and the substitution therefor of a symbolic or constructive delivery, where the circumstances of the case require it. Now, according to the better doctrine, an unequivocal declaration of gift, accompanied by a delivery of the only means by which possession of the thing given can be obtained, is sufficient." (20 Cyc. 1199.)

"Constructive or Symbolical Delivery. The trend of modern decisions is toward a modification of the early English rule requiring an actual, manual delivery of the property in all cases, to constitute a valid gift inter

vivos, and the substitution therefor of a symbolic or constructive delivery, where the circumstances of the case require it. Thus, in some cases, an unequivocal declaration of gift, accompanied by a delivery of the only means by which possession of the article given can be obtained, is sufficient. This is the rule where the article intended to be given is not present, or, if present, is incapable of manual delivery, as where it is too bulky. So, if the subject of the gift is under lock and key, delivery of the key, accompanied by words expressing a present intention to give, will satisfy the requirements of the law.'' (28 C. J. 636, 637.)

''Delivery of Key to Box or Receptacle.—Many cases on constructive delivery have been those in which there was a delivery of the key of a box or other receptacle containing property. The rule that appears to be most in accord with the authorities is that where the things intended to be given are not present, or where present are incapable of manual delivery from their size and weight, a delivery of a key to the receptacle or room containing them is a sufficient delivery to sustain a gift, but that where the articles are present and capable of manual delivery, the delivery of a key is insufficient, especially if the donee does not take the property into his actual possession during the lifetime of the donor.'' (24 Am. Jur. 745.) (See, also, 14 A. & E. Encycl. of L. (2d Ed.) 1021, 1022.)

The foregoing authorities cite decisions of sister States that follow the symbolic delivery rule. What is the rule in this State?

In *Telford v. Patton,* 144 Ill. 611, 620, the court states what is essential to prove a gift *inter vivos* and in referring to delivery, one of the essentials, the court states: ''The delivery may be constructive, as of a key, or of a part for the whole. (1 Pars. on Cont., *supra* [marg. page 234]).''

In *Hagemann v. Hagemann,* 204 Ill. 378, there was involved the question as to whether an *inter vivos*

gift of notes was established by proof that the donor placed the notes in an envelope marked with the donee's name, as owner, executed a writing importing a present transfer and delivery of the notes, and delivered the key to the safety deposit box where the notes were to be kept, to the donee, who subsequently took them into his possession. The court, in referring to the question of delivery, states (p. 383): ''Michael [the claimant] was given a key to the box containing the said notes. This alone has been held to be a good symbolical delivery. (*Stephenson v. King,* 81 Ky. 425; *Telford v. Patton,* 144 Ill. 611.)'' The court also states (p. 382): *''We think it clear that the intention of the donor, in cases of this character, is a controlling factor . . .''* (Italics ours.)

*People v. Benson,* 99 Ill. App. 325, involved a claim of a gift *inter vivos,* the wife of Benson being the claimant. In the opinion the court states (pp. 326, 327):

''The evidence clearly shows that Benson intended to give the notes to his wife and that he believed that he had done so. On different occasions shortly before his death, he stated to his son, to a nephew and to the maker of the notes, that he intended them in lieu of life insurance for his wife and had given them to her for that purpose. The notes were, at the time, locked up in a safe in a shop where he had done business before stricken with his last illness. This case hinges entirely upon the question of whether there was sufficient delivery to make the gift effectual.

''Appellee did not have manual possession of the notes until after the death of her husband. He gave to her the key to the safe in which the notes were kept and stated that he gave her the contents of the safe. After his death, she took manual possession of the contents. The notes were the only contents of value in the safe. While delivery of possession of the article is essential to the validity of the gift, the delivery need not always be a manual delivery. The delivery may

be symbolic, as the delivery of a key to a chest or a trunk. The term is not to be taken in such a narrow sense as to require that the thing given shall go, literally, into the hands of the donee and be carried away. An unequivocal declaration of gift accompanied by a delivery of the only means by which possession of the article given can be obtained, is sufficient. *Grover v. Grover,* 24 Pick. 261; *Coleman v. Parker,* 114 Mass. 30; *Hagemann v. Hagemann,* 90 Ill. App. 251.

"Where the donor, at the time of declaring a gift, divests himself of the means of possession and dominion and invests the donee with such means, he should certainly be considered as surrendering possession. *And so when Benson delivered the key to the safe to his wife and declared that the contents contained therein belonged to her, he parted with possession of the contents and ceased to have dominion over them.* From then on, appellee only, had power of manual possession. We think there was sufficient delivery to make the gift effectual." (Italics ours.)

In *Cottrell v. Gerson,* 371 Ill. 174, 179, 180, the court followed the ruling in *Hagemann v. Hagemann, supra,* that the delivery of a key constitutes a symbolic delivery.

*Chicago Title & Trust Co. v. Kirchner,* 213 Ill. App. 289, 294, cites with approval the ruling in the *Hagemann* case.

Defendants have not cited any Illinois case that holds that the doctrine of symbolic delivery does not prevail in this State.

In *Millard v. Millard,* 221 Ill. 86, cited by defendants, the opinion shows that the claim of the defendants to the property in question by gift *inter vivos* was a dishonest one and that the defendants did not hesitate to commit criminal acts in furtherance of their scheme to obtain certain securities belonging to the deceased. As to evidence offered by the defendants as to alleged

conversations with the deceased the opinion states (p. 96): "There was evidence that at the time of these conversations the deceased was much of the time unable and unfit to transact any business, and at the time of the last conversation the attending physician did not consider him possessed of sufficient intelligence to transact business. There was other evidence that no such conversation occurred, and the witness admitted that the deceased could scarcely speak and it was very difficult to understand him." The defendants in that case acted like common thieves and it is not surprising that the Supreme Court concludes its opinion with the following language (p. 97): "We do not think the defendants should be permitted to retain property acquired by a raid, in which they participated, on the safety deposit box, without the knowledge of its owner, and they should be required to surrender the proceeds." The decision in that case did not turn upon the question of symbolic delivery.

In *Hopkins v. Hughes*, 340 Ill. 604, cited by defendants, the court held that a delivery, in the donor's lifetime, of certain notes to a lawyer to hold for a certain intended donee, with directions to the lawyer to deliver the notes to the donee after the donor's death upon the presentation by the donee of receipts showing payment by him of certain debts and expenses, including funeral and burial expenses of the donor, does not constitute a valid gift, as such gift is not unconditional and there is no possibility of the vesting of title in the lifetime of the donor.

In *In re Estate of Wright*, 304 Ill. App. 87, cited by defendants, the claimant, Marie Furr, claimed that she was the owner of certain securities by gift *inter vivos.* She claimed that Wright, the deceased, delivered the securities to one Thornton with the unequivocal intention to pass the title to the securities to her. The Appellate Court of the Second District held (pp. 94, 95): "The gift could have been made to Thornton for

Marie Furr, if made absolute and unconditional, so that the gift would have taken effect at once. (*Taylor v. Harmison, supra* [179 Ill. 137].)'', but the court further held (p. 95):

''There is no evidence in the record proving clearly and convincingly that Wright delivered the securities to Thornton and thereby made Thornton the agent of Marie Furr, with Wright parting with all control over the securities absolutely, and making Marie Furr the principal invested with title to the securities and absolute control thereof as owner.''

*Suchy v. Hajicek,* 364 Ill. 502, cited by defendants, states the general rule as to the essentials necessary to make out a gift *inter vivos* and held that the essential elements were wanting in that case. No question of symbolic delivery was involved. We hold that the rule of constructive or symbolic delivery prevails in this State.

A study of many cases that bear upon the question as to whether a gift *inter vivos* has been proven convinces us that where a claim appears to be a suspicious one the law scrutinizes it with great care and adheres strictly to the rule that the proof as to all essentials necessary to constitute the gift must be clear and convincing, but, on the other hand, where, as in the instant case, the claim is clearly an honest one and the proof leaves no doubt that the deceased intended to give the personal property to the claimant and gave her the key to the safety deposit box in which the property was kept, the law will not be strained to defeat the intent of the deceased. As our Supreme Court stated in the *Hagemann* case, *supra,* ''the intention of the donor, in cases of this character, is a controlling factor.'' The contention of defendants that one of the essentials to constitute a gift *inter vivos,* delivery, was not proven by the degree of evidence required by law, is, in our judgment, without merit. Defendants argue that McMurdie was physically able to be up and around after

the date of the alleged gift, that the distance from the Oliver home to the bank where the vault box was located was only about three miles and that it was possible for the deceased, after the alleged gift had been made, to go to the vault and have the records changed so as to deprive plaintiff of access to the box. That McMurdie did none of the things that counsel suggests that he might have done tends to support plaintiff's theory that when he handed her the key he intended to deliver to her the contents of the box.

Defendants contend that plaintiff was guilty of *laches* in not bringing her action until March 13, 1941. It was the theory of fact of plaintiff that after the death of McMurdie she had the keys to the safety deposit box and that she went to the bank and talked to the man in charge of the vault; that she told him that Mr. McMurdie had given her the contents of the box and that as a delivery of the contents he had given her the key and that she wanted the contents of the box, that the vault man informed her that the attempted gift was ineffective and the assets would belong to the legal heirs of Mr. McMurdie, and that it was not until March, 1941, that she consulted Attorney Abraham, and he informed her that she had a legal right to the contents of the box. The parties agreed that William J. Hopkins, the manager of the vault department of the Upper Avenue Safe Deposit Company, testified before Judge Lewe that he had known the deceased for many years; that he did not think that he knew plaintiff, although her face seemed familiar to him, and that she may have been into the bank to see him; that he sees and interviews a great many people daily; that it was possible that the plaintiff had come to the bank and that he had forgotten her visit; that it was possible that she had brought him the box keys and requested entrance into the vault box, and if she had, he would have advised her, as a matter of practice, that such entry could not be permitted by the bank and

that only the personal representative of the deceased could gain admittance to the box; that it might be that she had had such a conversation with him. Plaintiff was a housewife, and it is a reasonable presumption from the evidence that she was unlearned in the law and inexperienced in business. She testified that she did not know of her legal rights until about a week before she instituted her suit, and the evidence as to the transaction in the vault was offered for the purpose of showing why she did not take action to obtain the contents of the box before the instant suit was commenced.

Defendants contend that they were prejudiced because distribution of the estate had been made before the action was brought or any claim made, and in support of the contention cite the following from *People v. Thomas,* 361 Ill. 448, 457:

"Nor can the doctrine of *laches* avail the relator. *Laches* consists of such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances *causing prejudice to the adverse party,* operates as a bar. *Carroll v. Houston,* 341 Ill. 531; *Forest Preserve District v. Emerson,* 341 id. 442; *Morse v. Seibold,* 147 id. 318." (Italics ours.)

Mere delay which does not prejudice or injure the defendant is no defense in a proceeding in equity. (*Young v. Kich,* 369 Ill. 29, 33.)

". . . *Laches* is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to the adverse party, constitutes a bar in a court of equity. (*Forest Preserve District v. Emerson,* 341 Ill. 442; *Thomas v. Chapin,* 274 id. 95.) Mere delay in asserting a right does not bar the enforcement of an equitable right unless the statutory period allowed for its assertion has elapsed. (*Yunkes v. Webb, supra* [339 Ill. 22].) To avail themselves of the de-

fense of *laches* within the statutory limitation period it was incumbent upon the defendants to show that the complainant's delay in instituting this proceeding was accompanied by some other element rendering it inequitable for her to assert her title. (*Manson v. Berkman,* 356 Ill. 20; *Yunkes* v. *Webb, supra; Thomas v. Chapin, supra.*) The evidence fails to show that the defendants were in any way prejudiced by the fact that the complainant did not elect to bring her suit to enjoin the obstruction of the easement at an earlier date." (*Brunotte v. DeWitt,* 360 Ill. 518, 534.)

". . . The question, then, is whether the mere lapse of time, short of the Statute of Limitations, without action taken by the complainants to enforce their right, amounts to *laches* so as to bar their remedy. This question must be answered in the negative. Lapse of time is only one of many circumstances from which the conclusion of *laches* must be drawn. Each case must be determined by its own particular facts. (*Reynolds v. Sumner,* 126 Ill. 58.) Lapse of time, alone, is not sufficient to bar a bill showing equity on its face, (*Smith v. Ramsey,* 1 Gilm. 373,) *and it is no bar where the party has been ignorant of his rights. (Roby v. Colehour,* 135 Ill. 300.) Where the obligation is clear and its essential character has not been changed by lapse of time, equity will enforce a claim of long standing as readily as one of recent origin as between the immediate parties to the transaction. (*Thorndike v. Thorndike,* 142 Ill. 450.) *Where there is nothing to show that the defendant has been misled by the delay to his injury, or in any way placed in a worse position by a failure to file the bill at an earlier date, there is no laches.* (*Turpin v. Dennis,* 139 Ill. 274.) The length of time during which the party neglects the assertion of his rights, which must pass in order to show *laches,* varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense controlled

by established considerations, and the lapse of time must be so great and the relations of the defendant to the rights such that it would be inequitable to permit the plaintiff to now assert them. (*Halstead v. Grinnan*, 152 U. S. 412.) We have held that mere delay for any period short of the Statute of Limitations could not bar the assertion of title to real estate; that it is only when the delay is accompanied by some other element rendering it inequitable to·permit the owner to assert his title that *laches* will bar the right within the statutory limitation period. *Gibbons v. Hoag*, 95 Ill. 45; *Compton v. Johnson*, 240 id. 621; *Hutson v. Wood*, 263 id. 376; *Lynn v. Worthington*, 266 id. 414; *Stowell v. Lynch*, 269 id. 437;·*DeProft v. Heydecker*, 297 id. 541." (*Schultz v. O'Hearn*,·319 Ill. 244, 248, 249. Italics ours.)

" 'The defense of *laches,* by reason of lapse of time and inaction of the party seeking relief, will not be permitted where the party was in ignorance of the material facts connected with the transaction which is attacked, or of his rights in relation thereto. . . .' " (*Sutherland v. Reeve*, 151 Ill. 384, 396.)

As to the individual defendants the defense of *laches* is without the slightest merit. They were not prejudiced nor injured by the alleged delay. The administratrix, without leave of court, distributed to Henrietta Springer, Joseph McMurdie, Grace Campbell, and herself the proceeds derived by her from the sale of plaintiff's property and the decree merely compels them to turn back to plaintiff moneys that belong to her. The individual defendants have had the use of plaintiff's money for over two and one-half years. It would be a strange rule of equity that would permit the individual defendants to retain the moneys belonging to plaintiff upon the ground of *laches.*

As to the ground of *laches,* urged by the administratrix: The administratrix contends that as plaintiff did not institute her suit until after she, as administratrix,

had made distribution of the proceeds realized from the sale of the stocks, etc., it would be inequitable to permit the present decree against the administratrix to stand. It must be noted that the individual judgment entered against Mrs. Crook is only for the amount that she distributed to herself, in her individual capacity. There is no evidence to show what assets, if any, were inventoried by the administratrix. Indeed, there is nothing to show when, if at all, an inventory was filed. It was admitted that no final account had been filed and no order of distribution had been entered at the time of the institution of this suit. Before an administrator can distribute the estate of a decedent he must first obtain an order of the court. (See the Administration Act, ch. 3, par. 445, sec. 291, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 110.542].) As there was no order for distribution the act of the administratrix in making distribution when she did was a voluntary one and contrary to the statute. Under par. 446, sec. 292, of the Act [Jones Ill. Stats. Ann. 110.543], where an administrator upon a court order pays the distributive share to a distributee before the expiration of nine months after the issuance of letters the distributee must give bond to be approved by the court, conditioned to refund the due proportion of any claim entitled to be paid from the estate distributed together with the expenses of recovery including reasonable attorneys' fees and additional expenses of administration. The record is silent as to whether bonds were given by the individual defendants before distribution was made. Nor does it show when the administratrix obtained her letters of administration nor when she obtained possession of the contents of the box. The judgment against Mrs. Crook as administratrix is payable only out of the assets of the estate in due course of administration. Plaintiff concedes that the administratrix is not personally liable for the amount she distributed and that the administratrix and

her sureties are not liable *per se* for the payment of judgments against the administratrix; that they are liable only for a proper administration of the estate.

The administratrix contends that "even if recovery could be had from the administratrix, the decree was erroneous in that it did not limit payment out of assets not previously inventoried in the estate," and argues that "because no claim was filed or judgment or decree entered against her within the probate year, the decree should limit the recovery against her in her official capacity to assets of the Estate of James R. McMurdie hereinafter inventoried or subsequently discovered." In support of this argument the administratrix cites *People v. Small*, 319 Ill. 437. The instant contention is an afterthought. In *People v. Small* the administratrix pleaded section 70 of the Administration Act, then in force, against the plaintiff's claim. Here the administratrix filed no plea that raises the question involved in the instant contention and the statement of plaintiff that the instant contention was not made at any point in the proceedings prior to the filing of the brief of the administratrix in this court seems to be sustained by the record. The administratrix, in support of her contention, relies upon section 204 of the Probate Act (ch. 3, par. 356, sec. 204, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 110.453]), which provides, in part: "All claims against the estate of a decedent, except expenses of administration and widow's . . . award, not filed within nine months from the issuance of letters testamentary or of administration, are barred as to the estate which has been inventoried within nine months from the issuance of letters . . . ." Plaintiff insists that the administratrix in the trial court made no defense based upon section 204 and that this court will not consider a defense raised here for the first time. But plaintiff raises a still stronger point against the instant contention, *viz.*, that although

the limitations under section 204 require that a claim against the estate must be "filed within nine months from the issuance of letters testamentary or of administration," the record in the instant case does not show when letters of administration were issued to Isabelle Crook and therefore it does not affirmatively appear that the present suit was not instituted within the nine months' period. We may add that plaintiff's claim is not of the character of claims that fall within the purview of section 204. Plaintiff's claim does not arise out of an act of the decedent which gave rise to a cause of action during his lifetime, but it arises out of the act of the administratrix in taking the property of plaintiff. As counsel for plaintiff argues, if the contention of the administratrix were sustained it would mean that if the administratrix took plaintiff's property, thereby enriching the estate, one or two days before the nine months' period expired, plaintiff would thereby be barred from recovering a judgment against the administratrix.

The administratrix finally contends that "since Isabelle Crook as administratrix received no financial gain from her alleged wrongful conversion, the equity side of the Court had no jurisdiction to enter a decree against her in her official capacity." In support of this contention the administratrix states: "As far as the action against Isabelle Crook in her official capacity was concerned, it was a straight suit for conversion masquerading in the guise of an action for an accounting"; that "because as administratrix she received no enrichment, the tort could not be waived by the plaintiff so as to establish jurisdiction in the equity side of the court." It is sufficient to say in answer to this strained contention that the instant complaint is not predicated upon the theory of wrongful conversion by the administratrix. The complaint charges, *inter alia,* that after the death of McMurdie,

Isabelle Crook, as administratrix of his estate, obtained possession of the contents of the box and has withheld the same from plaintiff, and that she has stated that she proposes to distribute the contents to herself, Henrietta Springer, Joseph McMurdie, and Grace Campbell; that Isabelle Crook holds said assets as a constructive trustee for plaintiff, and that she should be required to account to plaintiff and to turn over to her the proceeds in question. The point now made by the administratrix was not raised nor suggested in her answer to the complaint. The administratrix calls attention to the fact that the word "converted" is used in the decree and that therefore we must hold that the trial court found the administratrix guilty of a tort. The decree finds that Isabelle Crook, acting as administratrix, "obtained possession of the contents of the said box; converted the same into cash and realized from the disposition of the assets . . . the sum of $4,233.31." In the instant case plaintiff does not seek to recover damages for a tort. The complaint is predicated upon the theory that assets which were the property of plaintiff had come into the estate of the decedent and the complaint seeks an accounting. *Howard v. Swift,* 356 Ill. 80, cited by the administratrix, has no bearing upon the instant question.

After a patient, careful consideration of the contentions raised by defendants in the light of the salient facts we have reached the conclusion that it would be highly inequitable to sustain this appeal. To do so would not only work an injustice to plaintiff but would defeat the plain intent of the decedent to make the gift to plaintiff.

At the outset of this appeal plaintiff filed a motion to dismiss the appeal. We denied that motion, but plaintiff has renewed the motion in her brief and again strenuously argues that the record upon this appeal was filed late and therefore the appeal should be dis-

missed. While the motion is not without some merit, we have concluded to again deny it.

The decree of the superior court of Cook county is a just one and it should be and it is affirmed.

*Decree affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.