*In re* ESTATE OF LEONARD STAHL, Deceased—(Ursula Stahl, Petitioner-Appellant, *v.* Thomas S. Chuhak, Admr. of the Estate of Leonard Stahl, Deceased, Defendant-Appellee.)

(No. 58162; ▇▇▇▇▇▇)

First District· (5th Division)—July 27, 1973.

Mass, Miller & Josephson, of Chicago, (Russell G. Miller, of counsel,) for appellant.

King, Robin, Gale & Pillinger, of Chicago, (George W. Gale, of counsel,) for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Petitioner Ursula Stahl filed a petition in the Estate of Leonard Stahl, deceased, requesting:

1. the revocation of Letters of Administration issued to the Public Administrator and the issuance of Letters of Administration *De Bonis Non* to her as common-law widow and sole surviving heir of decedent, and

2. a declaration that the contents of a certain safety deposit box pass to her outside the estate.

Following a hearing held without a jury the court found, *inter alia:*

1. that petitioner was not the wife and is not the widow of the decedent, Leonard Stahl, and

2. that she had no interest in the contents of the safe deposit box.

Petitioner appeals from those findings.

The first issue presented is whether petitioner was the wife and is the widow of Leonard Stahl by virtue of the laws of Texas, thus entitling her to an intestate share of his estate. Ill. Rev. Stat. 1969, ch. 3, par. 11(3).

The necessary facts surrounding this question may be summarized briefly. Petitioner left her husband, Benjamin Mills, and five children on November 1, 1969, and went to live with Leonard Stahl. No divorce was obtained. Mills died on May 20, 1970, thereby removing any legal impediment to the consummation of a marriage with Leonard Stahl. (Ill. Rev. Stat. 1969, ch. 38, par. 11—12.) In July of 1970 the decedent traveled to Texas for a period of three days for the purpose of a vacation and the consideration of that state as a future retirement site. Petitioner accompanied him and evidence was introduced which suggested they held themselves out as husband and wife during this brief stay. Further, petitioner testified, without objection, that marital vows were privately exchanged in their hotel room. Upon return to Chicago they continued their relationship until decedent's death on February 1, 1971.

■■ Petitioner contends that the court erred in not determining that she was the common-law widow of decedent since Texas recognizes common-law marriages. She claims that she and decedent were domiciled in Texas and that since the marriage was legal there, such marriage was valid in Illinois upon their return to Illinois. (Citing *Peirce v. Peirce,* 378 Ill. 185, 39 N.E.2d 990.) In that case the court stated the general rule that marital status is governed by the law of the state of domicile but expressly found that the parties were not domiciled in Illinois and that they were in Nevada "for the purposes and with the intent of making their home there."

■■ Thus, we need only focus on the single issue of the domicile of the parties. We think the evidence patently establishes that the parties were at all times domiciled in Illinois. The court in *Owego Community School Dist. v. Goodrich,* 28 Ill.App.2d 407, 171 N.E.2d 816, 820, gave this test for the determination of domicile.

"A person can have only one domicile and once he establishes a domicile or permanent residence he retains it until a new one is established. To establish a domicile, two things are required.

First, a person must physically go to the new home and live there. Secondly, he must do so with the intention of making it his permanent home."

■■ The proof offered here falls far short of establishing a Texas domicile. In the most favorable light, the evidence only suggests a future intent to permanently reside in Texas. This is clearly insufficient. Restatement (Second), Conflict of Laws, ch. 2, sec. 18 (1971).

Defendant further points out that there was no valid common-law marriage in Texas. The applicable statute providing the necessary requirements for the validity of such marriage states:

"(a) In any judicial, administrative or other proceeding the marriage of a man and woman may be proved by evidence that:

\* \* \*

(Sec. 2) They agreed to be married, and after the agreement, they lived together *in this state* as husband and wife, and there represented to others that they were married." Tex. Family Code, Subchapter E, Sec. 1.91. (Emphasis added.)

Assuming that the agreement between the parties and the representations made to others while in Texas sufficiently meets two requirements of the statute, it is questionable whether the brief visit satisfies the third requirement of cohabitation within that state. Such provision could easily be construed as a self-imposed jurisdictional limitation to prevent mere transients from declaring themselves legally married under Texas law. A similar view was taken by this court in *Estate of Enoch*, 52 Ill.App.2d 39, 201 N.E.2d 682, where a two week sojourn to Colorado failed to establish the requisite cohabitation for a common-law marriage.

■■ We find no error in the court's determination that petitioner was not the common-law widow of decedent.

The second question presented is whether an *inter vivos* gift was made by the decedent to petitioner of the contents of a certain safe deposit box. On November 25, 1969, the decedent and petitioner executed a leasing agreement with the Uptown Safe Deposit Company. The terms of the agreement gave corenter status to the parties and thereby entitled access to either. Previously, the box was solely in the name of the decedent. Decedent also gave petitioner one of two keys, retaining the other for himself. Petitioner testified, without objection, that decedent had expressed a desire that she have the contents therein. It is urged that this court find these acts as having constituted a valid *inter vivos* gift.

■■■ The necessary prerequisites for a valid *inter vivos* gift are present donative intent of the donor, delivery of the gift to the donee and acceptance of the gift by the donee. (*Richardson v. Richardson*, 148 Ill.

563, 36 N.E. 608.) It is clear that constructive delivery is permissible, as by a key (*Oliver v. Crook*, 321 Ill.App. 55, 52 N.E.2d 453), and a gift will be sustained if the delivery divests the donor of possession and dominion over it and invests the donee with the only means by which possession may be obtained. See *Oliver*, also *Suchy v. Hajicak*, 364 Ill. 502, 4 N.E.2d 836.

The undisputed facts here demonstrate that the delivery was not completed until Leonard Stahl's death. At any time prior to his death he had the ability to withdraw the contents of the safe deposit box by virtue of the duplicate key and therefore a sufficient delivery was negated. (*Estate of Wilson*, 404 Ill. 207, 88 N.E.2d 662.) We note also from the record certain facts which cast doubt on decedent's donative intent. He did not have the government bonds in the box reissued in the name of petitioner and she did not enter the box until after his death, 15 months after she became a corenter, nor did she otherwise attempt to exercise any control over the contents of the box prior to his death. *Estate of Kloss*, 57 Ill.App.2d 118, 207 N.E.2d 92.

■■ Petitioner having failed to establish by clear and convincing evidence the alleged gift (*Schramm v. Schramm*, 13 Ill.2d 281, 148 N.E.2d 799), leaves the conclusion that the decedent did not effectuate a valid *inter vivos* gift.

For the reasons stated, we affirm the order of the circuit court.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.