Roy VALLADARES, Appellant,

v.

The STATE of Texas, Appellee.

No. 6-89-101-CR.

Court of Appeals of Texas, Texarkana.

Nov. 6, 1990.

Rehearing Overruled Dec. 4, 1990.

---

Roy Valladares, pro se.

John B. Holmes, Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Roy Valladares appeals *pro se* from his conviction for delivery by actual transfer of more than fifty pounds and less than two hundred pounds of marihuana. The jury assessed punishment at ten years in the penitentiary and a fine of $500.00. Valladares complains in his sole point of error that the evidence is insufficient to support the verdict because an actual delivery of the marihuana was not shown. We disagree and affirm the judgment.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found from that evidence the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

According to the undisputed testimony, the following occurred: On January 16, 1989, Gonzalo Anguiano, a Texas City narcotics officer working undercover for the Baytown Police Department, arranged to buy 145 pounds of marihuana for $87,-000.00 from Roy Gonzalez at Gonzalez's house. Since Gonzalez did not have a sample of marihuana at that time, Anguiano returned the next day and received one from Gonzalez. On January 18, Anguiano again returned to Gonzalez's home to inform him that he liked the sample and that he wanted to make a purchase. Gonzalez arranged for the two to meet later that day at a gas station in LaPorte, Texas. Gonzalez and Valladares, driving a green car, arrived at the gas station so that Gonzalez could see the money. After Gonzalez saw the money, held by undercover officer Zeke Cavazos in a nearby parking lot, he arranged for Anguiano to meet him two hours later at the same parking lot. Gonzalez and Valladares, driving a brown car, returned to the parking lot where Gonzalez had previously viewed the money. Gonzalez got in the car with Anguiano, and Valladares stood by the trunk of the brown car. Gonzalez told Anguiano that after he saw the marihuana in the trunk of the brown car, they would exchange car keys so that Gonzalez could leave the money in the officers' car and Anguiano could leave with the marihuana in the brown car. Later, they planned to switch the cars back. Gonzalez waited inside the car while Anguiano got out to look at the marihuana.

Valladares opened the trunk of the brown car, pointed to two large sacks, and told Anguiano, "There it is." Valladares testified that Gonzalez gave Anguiano the keys to the brown car which contained the marihuana. Anguiano testified that he

maintained custody of the marihuana and drove the brown car and the marihuana to Baytown, where he turned the contraband over to Officer Pettigrew.

The jury was charged on the law of parties. The evidence reviewed above sufficiently supports the finding that Valladares, acting as a party, actually transferred and delivered the contraband to Officer Anguiano.

Valladares argues that because the undercover police officers gave the "bust alert" to apprehend Valladares before Officer Anguiano took physical possession of the marihuana, the State failed to prove an actual delivery. We disagree.

■ That Anguiano may not have completed his taking possession of the contraband until after Valladares was arrested does not defeat the transfer. *See, e.g., Newman v. State,* 522 So.2d 71 (Fla.Dist. Ct.App.1988). The timing of the recipient's possession, viz-a-viz the defendant's arrest, is not controlling. The essential fact is that there was a completed transfer.

It is true that just because the police impound the contraband after an arrest does not necessarily mean that there was an actual delivery. But when the *purchaser* takes possession of it after the arrest there is a completed actual delivery. Logically, the time when the *seller* is arrested has nothing to do with whether the *purchaser* reduces the contraband to his possession. Valladares has made no claim that his arrest was premature.

In our case, Anguiano was not just "the police." He was the purchaser. That was not the case in *Flores v. State,* 754 S.W.2d 419 (Tex.App.–Corpus Christi 1988, no pet.). In that case, the purchaser, in the words of the court, *"never had"* possession of the contraband. *Flores v. State, supra* (emphasis added). The court correctly ruled that *some other* police officer's possession would not suffice for a completed transfer to the purchaser.

Even if the evidence did not show that Anguiano took physical possession of the marihuana, an actual delivery was shown.

We recognize that the cases in Texas presently require a completed transfer, which most construe to require that, for an actual delivery, the recipient must reduce the thing to his physical possession. These cases, however, are wrong in their interpretation of the Controlled Substances Act. The erroneous law and the confusion generated by these cases have been exposed and deplored in dissenting opinions by Presiding Judge McCormick and Judge Odom. *See Conaway v. State,* 738 S.W.2d 692 (Tex.Crim.App.1987) (McCormick, J., dissenting); *Queen v. State,* 662 S.W.2d 338 (Tex.Crim.App.1983) (Odom, J., dissenting). Even these scholarly dissents, in our view, have missed the mark.

■ The focus of the statute's prohibition against delivery of a controlled substance is on the actor—the transferor—not the transferee. The act which is punished is not possession, but delivery. As Judge Odom has said, "The issue is a matter of *the conduct of the accused,* not of the recipient." *Queen v. State, supra* (emphasis added). Within the meaning of the Act, a completed transfer occurs when the actor completely and unequivocally relinquishes possession of the substance in favor of the recipient. That the recipient does not reduce the substance to physical possession does not mean there has been no actual delivery. To hold that an actual delivery has not been effected until there has been a reduction of the substance to physical possession confuses actual versus constructive *transfer* with actual or constructive *custody. See Queen v. State, supra.* There can be an *actual delivery* into the *constructive custody* of a recipient. That is precisely what occurs when the transferor puts the collateral in the recipient's legal custody, or designates it for, and makes it readily available to, the recipient but the recipient does not reduce it to physical possession. There still has been an actual delivery to the *constructive custody* of the recipient. On the other hand, constructive delivery is where the act of *delivery,* as distinguished from the act of receipt, is accomplished indirectly, symbolically, through the act of another, or implied by law from the circumstances.

Technical rules of legal possession which apply in civil cases should not, and in reality do not, apply to criminal transfers because the act condemned by the statute is not possession by a recipient but a delivery by the actor. Thus, the concept of a completed transfer, as in the case of a deed or personal property in civil cases, does not apply. *See Caraballo v. State,* 706 S.W.2d 773 (Tex.App.–Houston [14th Dist.] 1986, pet. ref'd). Whether the recipient reduces the contraband to actual physical possession is not important; what is important is that the actor *traffics* in the distribution of the contraband. That is the gravamen of the offense, and it is the essential fact to be proved.

To hold that an actual delivery is not made unless and until the recipient reduces the substance to his physical possession would make deliveries to a recipient's home, boat, locker or suitcase not actual deliveries unless the recipient physically touched the contraband itself—a ludicrous conclusion. Indeed, carrying such reasoning to its logical conclusion would compel a holding that delivery of a container of contraband is not an actual delivery unless the recipient opens the container and touches the raw contraband. The Controlled Substances Act certainly did not intend such bizarre and unreasonable results.

■ In the criminal law context, a delivery may be accomplished by nothing more than making a thing available to another, placing it within his reach, notwithstanding there is no actual handing of the thing from one person to another. BALLENTINE'S LAW DICTIONARY 329 (3rd ed. 1969), quoted with approval in *Nevarez v. State,* 767 S.W.2d 766 (Tex.Crim.App.1989), an actual delivery case. Such a transfer is an actual one—not a constructive one. Delivery of the keys to a container which can only be possessed by use of the keys is an actual delivery in the criminal law context, not a constructive one.

The container in which the marihuana was located (the car) was delivered to Anguiano. Anguiano took physical possession of it and maintained that possession until he delivered it to Officer Pettigrew. Thus, the requirements of a completed transfer were met.

The judgment is affirmed.

BLEIL, Justice, concurring.

I concur in holding that the evidence presented during the trial of this case sufficiently supports the jury's finding that Valladares actually delivered more than fifty pounds of marihuana. Because sufficient evidence supports the guilty finding, I decline to join in the discussion about the various types of possible delivery.

GRANT, Justice, dissenting.

The question in this case is not whether a delivery had occurred, but whether the evidence supported a delivery by actual transfer. Under the Controlled Substance Act, delivery of a controlled substance is accomplished in three distinct ways: actual transfer, constructive transfer, and offer to sell. See *Ferguson v. State,* 622 S.W.2d 846, 848 (Tex.Crim.App. [Panel Op.] 1980); *Conaway v. State,* 738 S.W.2d 692, 694 (Tex. Crim.App.1987); *see also* TEX.REV.CIV.STAT. ANN. ART. 4476–15, § 1.02(8)[1]. The Court of Criminal Appeals has ruled that these are mutually exclusive ways in which delivery of a controlled substance might occur. *Conaway,* 738 S.W.2d at 694. The majority ignores this distinction by merging constructive transfer with actual transfer.

Under the law of parties, the State offered proof that Valladares was guilty of delivery of marihuana by constructive transfer or offer to sell. Valladares was charged in a three paragraph indictment alleging all three types of delivery. The State, however, abandoned the paragraphs alleging constructive transfer and offer to sell and elected to go to trial on the actual delivery charge. Thus, actual delivery was the only portion of the indictment read to the jury, and the court's charge to the jury contained only the actual transfer provi-

1. This section is now found in Tex. Health & Safety Code Ann. § 481.002(8) (Vernon 1990).

sion.[2] The State was, therefore, bound to prove delivery of marihuana by actual transfer beyond a reasonable doubt. See *Conaway*, 738 S.W.2d at 694.

The Court of Criminal Appeals addressed the elements of delivery of a controlled substance in *Daniels v. State*, 754 S.W.2d 214 (Tex.Crim.App.1988). In this opinion, the Court quotes BLACK'S LAW DICTIONARY 385–86 (5th ed. 1979), stating that "[a]ctual delivery consists *in giving real possession* to the vendee or his servants or special agents who are identified with him in law and represent him" (emphasis added). They further quote BLACK'S LAW DICTIONARY to define *constructive delivery* as "a general term, comprehending all those acts which, although *not truly conferring a real possession* of the thing sold on the vendee, have been held, by construction of law, equivalent to acts of real delivery" (emphasis added). The Court in *Daniels* also quotes BALLENTINE'S LAW DICTIONARY 329 (3rd ed. 1969) which defines *delivery* as:

a handing over; the surrender of possession to another

. . . .

For some purposes, a delivery is accomplished by nothing more than making a thing available to another, placing it within his reach, notwithstanding there is no actual handing of the thing from one person to another.

*Daniels v. State*, 754 S.W.2d at 220.

At first blush, the definition of delivery in BALLENTINE'S LAW DICTIONARY suggests that an actual transfer did occur in the present case because the two bags of marihuana were within Anguiano's reach. However, the portion of the definition setting out delivery to mean "placing it within his reach" begins with the words "[f]or some purposes." These introductory words indicate that this is limited to certain types of delivery. As stated *supra*, *deliv-*

*ery* is first defined as "a handing over; the surrender of possession to another." The Court in *Daniels* used the second part of the definition to determine constructive transfer, not actual transfer.

Actual transfer and constructive transfer were distinguished in *Williams v. State*, 783 S.W.2d 301 (Tex.App.–Corpus Christi 1989, no pet.). The court in *Williams* stated that an actual transfer occurs when "the person associated with the contraband has possession and control over it." Constructive transfer occurs when "the person associated with the contraband does not have possession of the contraband; rather, the person only has control over the contraband." *Williams*, at 302.

The majority holds that the essential fact of delivery was completed in the present case even though the recipient obtained possession after Valladares' arrest. The majority relies on a Florida case, *Newman v. State*, 522 So.2d 71 (Fla.Dist.Ct.App. 1988). There has been no Texas case in which a court has allowed conduct occurring after the arrest to establish delivery. The taking of the contraband after the arrest is a police seizure and cannot be construed as the conduct of a purchaser or recipient of the contraband. This seizure by the police can be made without the consent or agreement of the transferor and cannot be construed as a completion of a voluntary act of the defendant.

Furthermore, in *Newman v. State*, 522 So.2d 71, the court is endeavoring to determine if there was an actual, constructive or attempted transfer of a controlled substance. The court concluded that at the very least, the facts in the case supported a *constructive delivery*. In Texas, we cannot take our choice out of the three methods. Instead, we must determine if the State proved the method with which the defendant was charged and on which he was tried.

2. The jury charge defined *delivery* as the "actual or constructive transfer from one person to another of marihuana, whether or not there is an agency relationship." The portion of the jury charge which applied the law to the facts only authorized a conviction if the jury found "actual transfer" of marihuana. Expansive, prelimi-

nary definitions do not override the specificity of subsequent portions of the charge. *Lacy v. State*, 782 S.W.2d 556, 559 (Tex.App.—Houston [14th Dist.] 1989, no pet.); *Pulgarin v. State*, 635 S.W.2d 195, 197 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

The majority correctly states that the focus of the statute's prohibition against delivery of a controlled substance is on the actor—the transferor—not the transferee. However, in order to determine the type of delivery that occurred, the focus must be on what acts of delivery were completed between the transferor and the transferee. The majority opinion provides that an actual delivery can occur even though the transferee does not have possession of the controlled substance. This contradicts the Court of Criminal Appeals which held that "actual transfer" consists of completely transferring the real *possession* and control of a controlled substance from one person to another person. *Nevarez v. State*, 767 S.W.2d 766, 768 (Tex.Crim.App. 1989), quoting *Conaway*, 738 S.W.2d at 695.

The majority states that by requiring the transferee to obtain physical possession before an actual delivery has occurred confuses actual or constructive transfer with actual or constructive custody. The majority misinterprets the holding in *Queen v. State*, 662 S.W.2d 338 (Tex.Crim.App.1983). In *Queen*, the Court of Criminal Appeals was deciding whether an indictment, which did not contain the words "actual transfer" or "constructive transfer," was sufficient to put a defendant on notice as to the type of delivery the State was required to prove. The Court held that an indictment containing the words "actual custody" constitutes an allegation of delivery by actual transfer. *Queen v. State*, 662 S.W.2d at 341. The Court in *Queen* further stated that an indictment alleging that the defendant had transferred marihuana "into a motor vehicle within the care and control and custody" of the officer charged the defendant with delivery by constructive transfer. *Queen*, 662 S.W.2d at 341. The Court held that where there is no material difference between the language of the statute and the language of the indictment, an indictment which alleges all of the requisite elements of the particular offense is not deficient simply because it fails to "precisely track the language of the statute." *Queen*, 662 S.W.2d at 341. The language quoted by the majority in the present case

concerning the concept of constructive custody comes from the dissent in *Queen.*

The majority opinion provides that an actual delivery can occur by putting the collateral in the recipient's legal custody or by making the contraband available to the recipient even though the recipient does not obtain physical possession of it. The majority fails to distinguish between constructive transfer and actual transfer. Constructive transfer is not limited to transactions through live intermediaries. *See Davila v. State*, 664 S.W.2d 722 (Tex.Crim. App.1984). A constructive transfer may take several forms: the actor may constructively transfer narcotics to the intended recipient by entrusting the narcotics to an associate or the postal service for the delivery to the recipient, or the actor may place the contraband in a particular location and then advise the recipient of this location so that the recipient can retrieve the narcotics. *Queen v. State*, 662 S.W.2d at 340; *Rasmussen v. State*, 608 S.W.2d 205 (Tex.Crim.App. [Panel Op.] 1980)

The recipient does not have to physically touch the contraband in order for the transferor to be charged with delivery by actual transfer as suggested in the majority opinion. When the transferee takes control and possession of the container, the requirements of actual transfer are satisfied. For example, in the case of *Phillips v. State*, 704 S.W.2d 557 (Tex.App.—Beaumont 1986, pet. ref'd), an actual delivery was accomplished by the recipient's handling of garbage bags which contained the contraband.

The case of *Flores v. State*, 754 S.W.2d 419 (Tex.App.—Corpus Christi 1988, no pet.), is in point with the present case. In *Flores*, the defendant displayed the marihuana to the undercover officers, but the contraband at all times remained in the trunk of the brown car belonging to the defendant. The court held that since the officers never removed the marihuana, they never had real possession or control over it. Thus, there was no actual delivery.

Contrary to the majority's opinion, delivery of keys to Anguiano did not constitute

actual delivery.[3] At most, possession of the keys might be construed as having control over the contraband, but this fulfills only the requirement of a constructive delivery, not an actual delivery. In the case of *Queen v. State*, the Court of Criminal Appeals addressed a fact situation dealing with the delivery of keys. In the *Queen* case, the defendant took the officer's van key, drove the van to the home of a codefendant and loaded it with 100 pounds of marihuana. The defendant then drove the van back to the parking lot of the motel where the officer was staying, reentered the officer's motel room, and handed the keys back to him. The Court of Criminal Appeals held that handing the keys to the officer was a constructive delivery. *See also Pena v. State*, 776 S.W.2d 746 (Tex.App.—Corpus Christi 1989, pet. ref'd). In the present case, delivery of keys accompanied by a viewing of controlled substance is not evidence that establishes an actual transfer.

Following the holdings of the Court of Criminal Appeals, the evidence in the present case is insufficient to sustain the conviction. Therefore, the judgment of the conviction should be reversed and reformed to show acquittal.

---

**3.** In civil cases, the delivery of keys to personal property is construed as a constructive delivery of the object. *See* 38 C.J.S. *Gifts* § 22 (1943). For examples, *see In re Estate of Stahl*, 13 Ill. App.3d 680, 301 N.E.2d 82 (1973), and *Banks v. Harvey*, 98 Ga.App. 196, 105 S.E.2d 341 (1958).